UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LESTER WARD | CIVIL ACTION |
| VERSUS | NO: 21-18 |
| W&T OFFSHORE, INC. | SECTION: "A" (2) |

### ORDER AND REASONS

The following motion is before the Court: **Re-Urged Motion for Summary Judgment (Rec. Doc. 22)** filed by the defendant, W&T Offshore, Inc. The plaintiff, Lester Ward, opposes the motion. The motion, noticed for submission on July 20, 2022, is before the Court on the briefs without oral argument.

This case arises out of injuries that Mr. Lester Ward sustained to his back while cleaning mud and cement off of the deck of a fixed oil and gas platform owned and operated by W&T Offshore, Inc. ("W&T"). The platform, Ship Shoal 349-A, was located on the Outer Continental Shelf adjacent to Louisiana. As such, it is undisputed that Louisiana law applies to Ward's claim.

Ward was employed by Performance Energy Services, Inc. ("PES"), an offshore construction contractor hired by W&T to assist with the demobilization of a drilling rig on 349A and the welding of a temporary crane to the platform. On the date in question, January 1, 2020, Ward was directed by PES's foreman, Mr. David Flores, to shovel drilling mud off the top deck of 349A. Ward had been filling five-gallon buckets with drilling mud and then dumping the buckets into a cutting box for hours when he injured his back. Ward advises that he is now totally disabled as a result of his injury and even

1

receives Social Security Disability benefits.

A bench trial had been set for May 2, 2022, but the Court continued the trial at Plaintiff's unopposed request due to delays caused by COVID-19 and Hurricane Ida. (Rec. Doc. 11, Order). On March 8, 2022, the Court denied without prejudice as premature an earlier motion for summary judgment filed by W&T.[1] (Rec. Doc. 17, Order). At a telephone status conference with the Court on March 31, 2022, the Court granted Plaintiff leave to conduct additional discovery in light of W&T's original motion for summary judgment. (Rec. Doc.19, Minute Entry). A bench trial is scheduled for October 6, 2022. (*Id.*).

Like its original motion for summary judgment, W&T's re-urged motion for summary judgment is straightforward: The contract between W&T and PES demonstrates that PES was an independent contractor. Therefore, under Louisiana law, W&T cannot be liable to Ward for his injuries unless he can show that 1) W&T exercised operational control over PES in its task of performing the mud removal operation, or 2) that W&T was independently negligent for creating the hazard in the first place, and failing to hire a competent and qualified contractor with proper equipment to clean up the drilling mud.[2] W&T posits that all of the discovery that Plaintiff asked for when arguing that the prior motion for summary judgment was premature has been completed, yet it not only fails to create an issue of fact, it further supports W&T's

---

[1] When denying the original motion for summary judgment, the Court observed even then that W&T's motion for summary judgment was well-supported and Ward's opposition to it did not appear to be particularly strong. (Rec. Doc. 17, Order at 2).

[2] Ward does not contend that the ultrahazardous activity exception to the independent contractor rule would apply in his case.

position. The Court agrees.

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (*citing* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (*citing SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

When faced with a well-supported motion for summary judgment, Rule 56 places the burden on the non-movant to designate the specific facts in the record that create genuine issues precluding summary judgment. *Jones .v Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). The district court has no duty to survey the entire record in search of evidence to support a non-movant's position. *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300,

1307 (5th Cir. 1988)).

Moreover, this is a non-jury case—no part of it will be tried to a jury. The Court will sit as the finder of fact on all claims, and therefore will be tasked with resolving any factual disputes. In bench trial cases the district judge has greater discretion to grant summary judgment. *Jones v. United States*, 936 F.3d 318, 323 (5th Cir. 2019). The district judge may "decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result." *Id.* (quoting *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010)). Therefore, unless witness credibility will be a part of the disputed issues of fact that the non-movant is relying upon to avoid summary judgment, simply pointing to factual disputes, even material ones, may not suffice to defeat summary judgment.

Louisiana law is clear that a principal is generally not liable for the offenses of an independent contractor. *McDaniel v.R.J.'s Trans., LLC*, 310 So. 3d 760, 764 (La. App. 2nd Cir. 2021) (citing *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 549 (5th Cir. 1987)). Louisiana courts have identified a number of relevant factors in determining whether the relationship of a principal and independent contractor exists, including the existence of a contract for performance of a specific job, payment of a fixed price for the work, employment by the contractor of assistants who are under his control, the furnishings of necessary tools and materials by the contractor, and his right to control the conduct of his work while in progress. *Id.* (citing *Davenport v. Amax Nickel, Inc.*, 569 So. 2d 23 (La. App. 4th Cir. 1990)). It is not the supervision or control which is actually exercised by the employer that is significant, but whether from the nature of the relationship, the right to do so exists. *Id.* (citing *White v. Shell Expl. & Prod. Co.*, 951 So.

2d 1208, 1211 (La. App. 5th Cir. 2007)).

The relationship between W&T and PES was governed by the Master Service Contract ("MSC") dated September 26, 2007. (Rec. Doc. 22-4 Exhibit A). Paragraph 3.1 of the MSC is the parties' unequivocal agreement that PES is an independent contractor. Ward's contention that the language in paragraph 3.2, may suggest a greater degree of operation control, is unconvincing.[3] The MSC did not retain the right to control PES's work. Therefore, contractually speaking, PES was an independent contractor vis à vis W&T.

Ward argues that the cleanup task that he was performing when he injured his back was outside the scope of the work that PES was contracted to perform. The Court finds this contention to be unpersuasive even though Ward contends that he had never been asked to move drilling mud/cement before the date of his injury. Ward was not asked to remove drilling mud or cement during W&T's drilling operations when either W&T or another contractor might have been expected to perform that task. Those operations had been concluded at some earlier point in time; the drilling rig was no longer on the platform. Instead, as Rod Phillips explained in his deposition, old drilling mud and cement always accumulate under a rig and cannot be removed until the rig is removed. (Rec. Doc. 23-2 at 24). It was not a hazard that W&T created. And since

---

[3] Paragraph 3.2 of the MSC is the contractor's warranty that he will make all work conform to the relevant work order or face having W&T direct him to repair, replace or re-accomplish the non-conforming work. This does not suggest retention of operational control. *See McDaniel*, 310 So. 3d at 766 (citing *Nippa v. Chevron, USA*, 774 So. 2d 310, 314 (La. App. 4th Cir. 2000)) ("A principal is entitled to maintain supervisory control over a project done by an independent contractor to ensure that it complies with the contract.").

PES's job was to install a crane where the rig had been, it hardly raises a question that Flores would have directed his workers to clear the area of the debris so that the crane could go in place.

Having concluded that PES was an independent contractor, and having concluded that the work that Flores directed Ward to perform when he was injured fell within the scope of the work that PES was hired to perform for W&T, the Court considers the recognized exceptions to the general rule that a principal is not liable for an independent contractor. The first exception occurs when ultrahazardous activities are being performed by the contractor on behalf of the principal. *McDaniel*, 310 So. 3d at 765. That exception is not at issue in this case.

The second exception occurs when the principal retains "operational control" over the contractor's work or expressly or impliedly approves the unsafe work practices that led to an injury. *Id.* (citing *Klein v. Cisco-Eagle, Inc.*, 855 So. 2d 844 (La. App. 2nd Cir. 2003)). In order to determine whether a principal has retained operation control, a court must first analyze whether, and to what extent, the principal contractually reserved the right to control the work. *Id.* Actual control is also relevant to the operational control exception, but the supervision and control that is actually exercised by the principal is less significant than the contractual reservation of the right to control by the principal. *Id.* (citing *Ainsworth*, 829 F.2d at 549).

As the Court explained above, W&T did not contractually reserve the right to control the work to be performed by PES. But even beyond that, there is also no evidence in the record to suggest that W&T had retained any operational control over the work being performed by PES. Operational control exists only if the principal has

6

direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in his own way. *McDaniel*, 310 So. 3d at 766 (citing *Klein*, 855 So. 2d at 844).

All of the evidence establishes that the decision to instruct Ward to clean up the cement/mud was solely Flores's. W&T did not specifically instruct PES to clean up the drilling debris (or request that PES clean it up), which according to Rod Phillips is present whenever a drilling rig is removed from a platform, and cannot be removed until the rig is taken off of the platform. PES's job was to install a crane on the deck where the rig had been removed and the old debris had to be cleared. No one from W&T had to tell Flores what to do. In fact, according to Rod Phillips, the only persons with W&T who would have had the authority to instruct Flores as to anything, were two engineers who worked out of W&T's office and were not on the offshore platform directing PES's movements. There is no evidence that they gave any instructions to Flores about the cleanup operation. None of this is in dispute.

So assuming for the sake of argument that Ward's back injury was due to some fault by Flores, a questionable proposition given that Ward's injury is not suggestive of one that would only occur due to negligence, and given that what Flores directed Ward and the other workers to do was not necessarily unsafe (even if there might have been an easier way to accomplish the task), W&T is not liable for any injuries that resulted from Flores's actions on the job.

In sum, there are no disputed issues of material fact that militate in favor of denying summary judgment.

Accordingly, and for the foregoing reasons;

7

**IT IS ORDERED** that the **Re-Urged Motion for Summary Judgment (Rec. Doc. 22)** filed by the defendant, W&T Offshore, Inc. is **GRANTED**. The complaint is dismissed with prejudice.

August 9, 2022

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE